## BECK, ADM'R, vs. BURNETT.

1. The statute of 1842 (Clay's Digest 502,) authorizing the redemption of lands sold under execution, does not operate on a sale made since the passage of that act, by the marshal, under an execution issued on a judgment of the Circuit Court of the United States for the Southern District of Alabama rendered in 1840.

ERROR to the Chancery Court of Wilcox.

Heard before the HON. J. W. LESESNE.

This bill was filed by the defendant in error, against the intestate of the plaintiff in error, to redeem certain lands which had been sold, in 1844, by the United States marshal of the Southern District of Alabama, under an execution issued on a judgment rendered in March, 1840, in the Circuit Court of the United States for said Southern District. These facts being admitted by the answer, the Chancellor decreed in favor of the complainant; and his decree is now assigned for error.

JOHN A. CAMPBELL, for plaintiff in error.

GEO. W. GAYLE, contra.

GOLDTHWAITE, J.—The only question presented by the record in this case is, whether the act of July, 1842, (Clay's Dig. 502,) authorizing the redemption of lands sold under execution, operates on a sale made by the marshal, upon an execution based on a judgment of the Circuit Court of the United States for the Southern District of Alabama rendered in 1840, the sale having been made in 1844.

The cases to which the judicial power of the Federal Government extends, are defined by the constitution; and by the same instrument, the legislative department of the same government is invested with the authority to pass all laws which are necessary and proper to carry this power into execution. If, therefore, it is necessary and proper that the judgments of the national courts should be enforced by execution, against the person or the property of the defendants in such judg-

ments, Congress has a clear right to pass laws for that purpose, and the effect of the laws thus passed could not be affected by any State legislation. The power to pass laws for this object, also confers upon Congress the authority to adopt rules existing in State courts, or remedies founded upon State legislation; and when this is done, such rules and remedies derive their efficacy, not from any inherent power in themselves, but by reason of their recognition or adoption by Congress. This was the principle decided by the Supreme Court of the United States in Wayman v. Southard, 10 Wheat. 1, and by the same court in the Bank of the U. S. v. Halstead, 10 Wheat. 51. It was affirmed in Beers v. Houghton, 9 Peters 359, in which case the doctrine was laid down by Judge Story in the following terms: " State laws cannot control the exercise of the powers of the national government, or in any manner limit the operation of the process or proceeding in the national courts. The whole efficacy of such laws, in the courts of the United States, depends upon the enactments of Congress. So far as they are adopted by Congress, they are obligatory; beyond this, they have no controlling influence. Congress may adopt such State laws directly, by a substantive enactment, or they may confide the authority to adopt them to the courts of the United States.

This exposition of the law by the Supreme Court of the Union, in relation to the exclusive power of Congress in relation to the enforcement of the judgments of the federal courts, is binding upon this court; and as we have decided that the redemption act of 1842 did not act upon the contract, but only affected the remedy by which the judgment rendered upon it was to be enforced, (Iverson v. Shorter, 9 Ala. 713;) the question before us, in this aspect, is reduced to the inquiry, as to whether the act referred to, has been adopted under any of the statutes of the United States.

The first act, that of 1789, was of limited duration, and expired at the end of the ensuing session of Congress. This act provided, that the forms of writs, executions, &c., should be the same in each State respectively, as were then used or allowed in the Supreme Courts of the same. Ingersoll's Abr. 101, note. The act of 8th May, 1792, continued in force the same form of execution adopted under the previous act;

but it applied only to the modes of proceeding in force in 1789, and did not recognize the authority of any laws of this description, which might subsequently be passed by any State. It adopted the system as it then stood, "subject, however, to such alterations and additions, as said courts shall, in their discretion, deem expedient, or to such regulations as the Supreme Court of the United States shall think proper, from time to time, to prescribe to any Circuit or District Court." Ing. Ab. 101; Wayman v. Southard, *supra.* There is no rule that we are apprised of, which, under this statute, adopts the redemption law of this State; and without such a rule, it could not operate under the construction given to the act of 1792.

The only other acts of Congress which can have any bearing upon the question under consideration, are the process act of May, 1828, (4 Statutes at large 281,) providing for the adoption of the execution and other final process in force in each State, at the date of its passage; and the act of July, 1840, the fourth section of which provided, "that judgments on decrees hereafter rendered in the Circuit and District Courts of the United States, shall cease to be liens on real estate or chattels real, in the same manner, and at like periods, as judgments and decrees of the courts of such States now cease to be liens thereon." 5 Statutes at large 393. As this last act applies only to judgments and decrees rendered after its passage, it can have no application to the judgment under which the land was sold, which the record shows was rendered in March, 1840.

The act of 1828 applying only to such State laws regulating executions and other final process, as were in force at the time of its enactment, we are brought to the law of this State, for this object, which was then in force. This law was the act of 1812, (Clay's Dig. 205, § 17,) as modified by the act of 1820 (Clay's Dig. § 31.) Under the operation of these acts, lands were made subject to execution; the writ of execution so framed as to include them, and the sheriff's deed to the purchaser under execution sale, declared to vest in such purchaser, "all the right, title and interest which the defendant had in and to such real estate in law." The adoption by Congress of the executions and final process in force under

the statutes to which we have just referred, was intended to give to such process when issued from the courts of the United States in Alabama, precisely the same effect which process of that character had under our own laws. If a sale of land under execution, with the sheriff's deed, conveyed the legal title of the defendant to the purchaser, under the operation of our State laws, a sale by the marshal, upon an execution from the federal courts in this State, conveyed the same title to the purchaser; and as the redemption act was passed since 1828, and has not been adopted by Congress, it cannot have any effect upon execution sales, upon judgments rendered in the United States courts in this State.

The argument that the act of 1842 establishes a rule of property, and that it is binding upon the federal courts under the thirty-fourth section of the judiciary act of 1789, is deserving of consideration. The section referred to is in these words: "The laws of the several States, except where the constitution, treaties and statutes of the United States shall otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the cases where they apply." Ing. Ab. 99. This section has been frequently construed, and upon authority it is well settled, that it does not apply to laws relating to practice, process, or modes of proceeding after judgment; that the State laws which furnish to the court a rule for forming the judgment, are binding on the federal courts as law; but the rules for carrying that judgment into execution, either as regards the form or effect of the process, are governed by the acts of Congress, and not by State legislation. U. S. Bank v. Halstead, 10 Wheat. 51; Wayman v. Southard, *supra;* Thompson v. Phillips, Baldwin's C. C. R. 274. In Iverson v. Shorter, *supra,* as we have already said, it was held that the act of 1842 affected the remedy only, and this being the case, under the authorities we have cited, it follows that the section referred to has no application to the case before us.

It results from the views we have expressed, that the decree of the Chancellor was erroneous; and his decree must be reversed, at the costs of the defendant in error, and the bill be dismissed at the complainant's costs.

GIBBONS, J., not sitting.